## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN PLATT, | : | CIVIL ACTION NO. 1:19-CV-1829 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| JAMES GRAHAM, R. CLEM | : | |
| MALOT, PENNSYLVANIA | : | |
| MUNICIPAL CODE ALLIANCE, | : | |
| INC., and NEW OXFORD BOROUGH, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Brian Platt filed this action alleging First Amendment retaliation by defendants James Graham, R. Clem Malot, New Oxford Borough ("the Borough"), and the Pennsylvania Municipal Code Alliance, Inc. ("PMCA").  Defendants move to dismiss Platt's claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 37).  We will grant in part and deny in part defendants' motion, and grant Platt leave to file an amended complaint.

### I.    Factual Background & Procedural History

Platt is a business owner in New Oxford Borough in Adams County, Pennsylvania.  (Doc. 33 ¶¶ 1, 15).  The Borough has appointed PMCA to enforce its maintenance, zoning, and building codes.  (Id. ¶ 18).  Graham and Malot are codes officers and zoning officers in the Borough and are both employed by PMCA.  (Id. ¶¶ 16-17).  This action arises out of Platt's fraught relationship with Graham, Malot, and the Borough.

According to the complaint, Graham visited Platt's business in October 2018 and served a Notice of Violation, which claimed Platt violated an ordinance that forbids illegal burglar alarms.  (Id. ¶¶ 22-30).  When Platt asked Graham about the nature of the ordinance and how he had violated it, Graham purportedly refused to answer him and instead threatened to take him to jail.  (Id. ¶¶ 29, 31-32).  Over the next week, Platt sought to file a complaint about Graham's behavior with the Borough, spoke about the incident at a Borough council meeting, and posted comments critical of Graham and PMCA on Google and YouTube.  (Id. ¶¶ 42-50).

A few months later, in March 2019, Platt learned that Graham had been hired as a police officer by Abbottstown Borough.  (Id. ¶ 52).  He emailed the Abbottstown Borough solicitor to "warn" the solicitor about Graham, detailing the 2018 confrontation.  (Id. ¶ 53).  The next day, Graham learned of Platt's email and texted the Abbottstown Borough administrator, allegedly claiming that he remembered arresting a "Brian Platt" twenty years ago for burglary.  (Id. ¶¶ 54-59).  Platt has never been arrested by Graham and apparently did not live in Pennsylvania at the time of the alleged arrest.  (Id. ¶ 59).

Several months after this exchange, Graham surveilled Platt's business for a two-week period in September 2019, leading Platt to eventually contact the police. (Id. ¶¶ 71-80, 125-28).  Graham conducted most of this surveillance off-the-clock and not in his capacity as a codes enforcer.  He purportedly visited Platt's business after Malot explicitly assured Platt that Graham was no longer involved in any code enforcement action against Platt.  (Id. ¶¶ 81-85, 139-42).  Also in September 2019, PMCA and Malot issued a second Notice of Violation for items unrelated to the

burglar alarm Graham had investigated.  (<u>Id.</u> ¶¶ 90-104).  This Notice of Violation concerned garbage and scrap material on the property, unmaintained vegetation, and unpermitted structures.  (<u>Id.</u>)  Although Malot signed this Notice, Graham allegedly initiated the enforcement action.  (<u>Id.</u> ¶¶ 137-39).  After Malot arranged a site visit at Platt's business, the Notice of Violation was withdrawn.  (<u>Id.</u> ¶¶ 164-65, 169).

Three days after Malot's visit, Platt again spoke at a Borough Council meeting.  (<u>Id.</u> ¶¶ 170-73).  Platt also posted a series of critical comments about Graham on the Abbottstown Borough Facebook page two days after he spoke at the meeting.  (<u>Id.</u> ¶¶ 174-84).  The morning after Platt finished posting online, Malot emailed Platt to revive part of the Notice of Violation that had previously been withdrawn.  (<u>Id.</u> ¶¶ 192-98).  In this email, Malot noted he "was dismayed" to hear about Platt's presentation to the Borough Council as well as Platt's recent Facebook posting.  (<u>Id.</u> ¶ 193).

Platt filed the instant lawsuit the following month, seeking declaratory and injunctive relief under 42 U.S.C. § 1983.  After Platt filed suit, Graham visited Platt's property an additional 18 times.  (<u>Id.</u> ¶ 202).  Platt subsequently filed an amended complaint and, later, the currently operative second amended complaint.  Platt accuses defendants of retaliation against him after he exercised his rights to free speech and to petition the government under the First Amendment to the United States Constitution.  Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion is fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief may be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County</u>

<u>of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings,</u>

<u>Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts

contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, [and] undisputedly authentic documents if the

complainant's claims are based upon these documents." <u>Mayer v. Belichick</u>, 605

F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol.</u>

<u>Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

<u>Phillips</u>, 515 F.3d at 232 (alteration in original) (quoting <u>Bell Atl. Corp. v. Twombly</u>,

550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts

a three-step inquiry.  <u>See</u> <u>Santiago v. Warminster Township</u>, 629 F.3d 121, 130-31

(3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a

plaintiff must plead to state a claim.'"  <u>Id.</u> at 130 (alteration in original) (quoting

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a

claim must be separated; well-pleaded facts are accepted as true, while mere legal

conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  There is no dispute that defendants in this case are state actors.  The only question is whether Platt has plausibly alleged that defendants violated his First Amendment rights.

A plaintiff states a viable claim for First Amendment "when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights."  Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997).  A plaintiff must allege that (1) he engaged in "constitutionally protected conduct,"

(2) the defendants took "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) there is a "causal link" between the protected conduct and the retaliatory action.  Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (quoting Palardy v. Township of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018)).  The parties do not dispute that the first prong is satisfied, (Doc. 33 ¶ 205; Doc. 38 at 2, 18), so we will consider the second and third prongs of retaliatory action and causal link.[1]

### A.    Retaliatory Action

Governmental action is retaliatory if it is "sufficient to deter a person of ordinary firmness from exercising [his] First Amendment rights."  McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (citing Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  The court employs an objective standard, considering "whether the act would deter a person of ordinary firmness, not whether the plaintiff was deterred."  Mirabella v. Villard, 853 F.3d 641, 650 (3d Cir. 2017).  The "deterrence threshold" for a First Amendment retaliation claim is "very low."  O'Connor v. City of Newark, 440

---

[1] Neither PMCA nor New Oxford Borough can be held liable under Section 1983 using a theory of *respondeat superior*; Platt must base his claim against these defendants on a "policy or custom" of these entities.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Baloga, 927 F.3d at 761.  Such a policy or custom can be established when a municipality's "failure to train its employees . . . evidences a 'deliberate indifference' to the rights of its inhabitants."  City of Canton v. Harris, 489 U.S. 378, 389 (1989) (citation omitted); Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  Platt's complaint contains a plausible allegation of failure to train.  (Doc. 33 ¶¶ 208-09).  Defendants have not challenged the Monell claim, and neither party briefed the court on this issue.  The court therefore expresses no opinion on PMCA's or New Oxford Borough's potential municipal liability at this time.

F.3d 125, 128 (3d Cir. 2006).  That is, the "effect of alleged retaliation on protected activities need not be great . . . but must be more than *de minimis*."  <u>McKee</u>, 436 F.3d at 170 (citing <u>Suppan</u>, 203 F.3d at 235).  While resolution of this question "is a fact intensive inquiry," <u>Brennan v. Norton</u>, 350 F.3d 399, 419 (3d Cir. 2003) (citation omitted)), governmental action that is "otherwise legitimate . . . can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech."  <u>Anderson</u>, 125 F.3d at 161.

Platt alleges that defendants retaliated against him following several exercises of his First Amendment rights.  Platt claims defendants retaliated through Graham's multiple instances of surveillance of Platt's property, both on- and off-the-clock; Graham's defamatory remarks regarding Platt's alleged criminal history; and Malot's issuance, withdrawal, and reissuance of code violations.  (Doc. 33 ¶¶ 203-11).  Defendants counter that their interactions with Platt were nothing more than civil discourse that was eventually resolved and that Platt's continued exercise of his rights belies his claim of deterrent retaliatory conduct.  (Doc. 38 at 14-18).

It is well settled that "[r]etaliatory surveillance is actionable under Section 1983."  <u>See</u> <u>Anderson</u>, 125 F.3d at 160.  Platt alleges that Graham repeatedly surveilled his business, during and outside of work hours, both after Platt exercised his First Amendment rights *and* after Platt filed this lawsuit.  (Doc. 33 ¶¶ 71-85, 125-28, 202).  He alleges Graham continued to visit the property even after Malot claimed Graham "would have no further involvement."  (<u>Id.</u> ¶¶ 137-42).  These allegations, if true, could reasonably deter a person of ordinary firmness from

exercising his First Amendment rights.  See Anderson, 125 F.3d at 162-63.  Platt thus makes a colorable claim for retaliation due to Graham's surveillance.

Graham's text message remarks and Malot's reissuance of the code violation are not so easily resolved.  Both instances also involve speech, and therefore Malot's and Graham's "own First Amendment speech rights are implicated."  See Zaloga v. Borough of Moosic, 841 F.3d 170, 176 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 573 (3d Cir. 2001)).  In such a case, if an official's speech does not indicate that "punishment, sanction, or adverse regulatory action" will result, Mirabella, 853 F.3d at 651, then such speech is not First Amendment retaliation, "*even if defamatory*."  McLaughlin, 271 F.3d at 573 (emphasis added) (citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000)).  Such speech is also not retaliation even when a defendant "speaks critically of plaintiff," or pressures an outside party to "take adverse action" against a plaintiff.  McLaughlin, 271 F.3d at 573.  Thus, only if the communications from Graham or Malot included a "threat, coercion, or intimidation" could the speech be characterized as retaliatory.  See Mirabella, 853 F.3d at 651 (quoting McLaughlin, 271 F.3d at 573).

Graham's text message remarks to the Abbottstown Borough administrator fail to meet this threshold.  Platt states that Graham defamed him by falsely claiming to the administrator that Graham had arrested Platt 20 years prior.  (Doc. 33 ¶¶ 58, 59).  Platt fails to plead sufficient facts to show that this text exchange contained any sort of intimidation or threat; indeed, Platt fails to explain how or when he learned of this text exchange at all.  While Graham's alleged defamation of Platt would be clearly inappropriate, Platt has not sued under a theory of

defamation.  Accordingly, Graham's texts to the Abbottstown Borough administrator are not, at this juncture, "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."  See Mirabella, 853 F.3d at 649; see also Bartley v. Taylor, 25 F. Supp. 3d 521, 527, 539 (M.D. Pa. 2014) (complaints about plaintiff to plaintiff's employer not actionable as First Amendment retaliation).

On the other hand, Malot's email to Platt *does* clear the pleading threshold for retaliation.  Platt alleges that Malot withdrew the Notice of Violation on October 3, 2019.  (Doc. 33 ¶¶ 164, 169).  A few days later, Platt spoke to the New Oxford Borough Council and criticized Graham on Facebook.  (Id. ¶¶ 170-84).  Malot then emailed Platt, noted he was "dismayed" to learn of Platt's speech at the Council meeting and online, and attached a Zoning Permit application for one of Platt's alleged code violations.  (Id. ¶¶ 192-97).  Notably, the violation Malot revived through his email was the only violation from the original Notice of Violation that carried potential criminal penalties.  (Id. ¶¶ 98, 195-97).

Defendants rejoin that Malot's email to Platt was mere "civil discourse." (Doc. 38 at 7-8).  But it is beyond peradventure that "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around."  See Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 68 (1963).  Malot's revival of the Notice of Violation does imply "that punishment, sanction, or adverse regulatory action" would follow in response to Platt's First Amendment speech.  See Mirabella, 853 F.3d at 651.

In sum, both harassing surveillance and reissuance of code violations in response to an exercise of First Amendment rights constitute acts that may reasonably deter a person of ordinary firmness from exercising those rights.  As we construe the facts in the complaint in a light most favorable to Platt, at least some of defendants' alleged actions meet the "very low" threshold to sustain a claim for First Amendment retaliation.  See O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006).  We will grant defendants' motion to the extent Platt claims that Graham's texts to the Abbottstown Borough administrator constitute retaliation; we will otherwise deny defendants' motion to dismiss in this respect.

**B.     Causal Link**

Platt must also plead a causal connection between the exercise of his First Amendment rights and the government's alleged retaliatory action.  See Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006).  While the conduct need not be the only cause of the government action, it must be "a substantial or motivating factor" for the action.  Conard v. Pa. State Police, 902 F.3d 178, 184 (3d Cir. 2018) (citing Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016)).  Our court of appeals has rejected a "bright line rule" for temporal proximity between protected speech and retaliation.  Conard, 902 F.3d at 184.  Plaintiff may plead causation through "unusually suggestive timing," a "pattern of antagonism," or an inference of causation gleaned from a holistic review of the record.  Id.; Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Defendants focus on the initial incident between Platt and Graham that occurred in October 2018 and Platt's initial complaints to the New Oxford Borough

Council around that time.  (Doc. 38 at 12, 13).  Defendants argue that Malot's code

enforcement action in September 2019 occurred months after Platt's exercise of his

rights and that this extensive temporal lapse removes any possibility of unusually

suggestive timing.  (Id.)  Defendants' reliance on Platt's 2018 exercise of his First

Amendment rights is far too narrow, as it fails to account for Platt's successive

exercise of those rights.  Platt's continued exercise of his First Amendment rights in

2019 is no less protected.

    Malot's revival of the Notice of Violation is at least one instance where

defendants' actions quickly followed an exercise of Platt's First Amendment rights.

On October 3, 2019, Platt received an email from PMCA indicating that Malot would

withdraw the original Notice of Violation.  (Doc. 33 ¶ 164).  Four days later, on

October 7, Platt attended a Borough Council meeting to complain about Graham's

ongoing surveillance of his property and the previous Notice of Violation.  (Id. ¶¶

170-73).  Two days later, on October 9, Platt posted negative comments on the

Abbottstown Borough Facebook page about Graham.  (Id. ¶¶ 174-84).  And on

October 10, just one day later, Malot emailed Platt to revive the previously

withdrawn Notice of Violation.  (Id. ¶¶ 192-97).  This instance of alleged retaliatory

conduct occurred within three days of Platt's speech to the Borough Council and

less than a day after his Facebook posts.  The close temporal proximity between

Platt's actions and Malot's email easily meets the standard for "unusually

suggestive timing" to establish a causal link.  See Conard, 902 F.3d at 184.

    Furthermore, Platt alleges that Graham surveilled his business as well as

another property he owned.  (Doc. 33 ¶¶ 71-80, 125-28, 202).  This surveillance

allegedly occurred on least nine occasions leading up to the Notice of Violation in September 2019, as well as eighteen more occasions in the two months after Platt filed his complaint in this case.[2]  (Id. ¶¶ 76, 125, 202).  Without specific dates of Graham's conduct, the court is unable to assess temporal proximity to Platt's exercise of his First Amendment rights.  But the sheer number of instances of surveillance, coupled with the timing of the Notice of Violation and the filing of Platt's lawsuit, clearly suggest "a pattern of antagonism."  See Farrell, 206 F.3d at 280-81.  Thus, Platt has pled sufficient facts to establish causation between his exercise of First Amendment rights and defendants' retaliatory conduct.

   **C.     Leave to Amend**

   The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases if a curative amendment is conceivable.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The deficiencies requiring partial dismissal of Platt's complaint as it pertains to Graham's text messages to the Abbottstown Borough administrator are factual rather than legal in nature and thus are conceivably curable.  Accordingly, we will grant Platt leave to file an amended complaint.

---

[2] A plaintiff can also allege First Amendment retaliation based on defendant's response to his filing of a lawsuit.  See Conard, 902 F.3d at 184; Chinniah v. East Pennsboro Township, 761 F. App'x 112, 116-17 (3d Cir. 2019) (nonprecedential).

IV.   **<u>Conclusion</u>**

For the foregoing reasons, the court will grant in part and deny in part defendants' motion to dismiss.  An appropriate order shall issue.


<u>/S/ C<small>HRISTOPHER</small> C. C<small>ONNER</small></u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    November 6, 2020